## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JEFFREY L. REAGLE,                    )
                                      )
          Petitioner,               )
                                      )
vs.                                   )        Case No. 09-CV-507-GKF-PJC
                                      )              (Base File)
JUSTIN JONES, Director,               )
                                      )              09-CV-512-GKF-FHM
          Respondent.               )

## OPINION AND ORDER

This is a consolidated 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state inmate

appearing pro se.  Before the Court is Petitioner's amended petition for habeas corpus relief (Dkt.

# 8). Respondent filed a response (Dkt. # 12), and has provided the state court records necessary for

adjudication of Petitioner's claims (Dkt. #s 12, 13, 14).  Petitioner filed a reply (Dkt. # 15), exhibits

supporting his reply (Dkt. # 16), and supplemental exhibits (Dkt. # 20). For the reasons discussed

below, the Court finds the amended petition shall be denied.

As a preliminary matter, the Court notes that on May 23, 2012, Petitioner filed a motion to

expedite ruling (Dkt. # 55).  In light of today's ruling, that motion shall be declared moot.  In

addition, because the amended petition replaces and supersedes the original petition, the original

petition (Dkt. # 1) shall be declared moot.

### BACKGROUND

On July 10, 2007, Tulsa Police Officer Carolyn Ash responded to 911 calls of "shots fired"

in the area of 200 S. Rockford Avenue, in Tulsa, Oklahoma.  As she arrived in the area, she saw a

man who fit the description given by the 911 callers pacing back and forth near a motorcycle parked

in front of a building containing five (5) apartments. That man was later identified as Petitioner,

Jeffrey Lee Reagle. Officer Ash also saw three other men near the intersection and asked if they had heard gunshots. One man responded, "yes." Another man told Officer Ash that the man near the motorcycle had just kicked in one of the apartment doors. Officer Ash proceeded to park her patrol car in front of the motorcycle to prevent Petitioner from leaving. She asked him if she could pat him down for weapons. He agreed and she patted his front pockets and around his waist, but found no weapon. At about this time, Officer Richard Davis arrived as backup officer. As he approached, Petitioner got on the motorcycle and started to insert the key in the ignition. Officer Ash quickly grabbed the key so that the suspect could not start the motorcycle engine. Petitioner jumped off the motorcycle, threw his helmet to the ground, and started to walk away. Officer Davis grabbed Petitioner's left arm and Officer Ash grabbed his right arm in an effort to prevent him from leaving. Petitioner continued to try to leave, causing Officer Ash to lose her grip on Petitioner's arm and be knocked to the ground. With his free arm, Petitioner punched Officer Davis in the face, causing the Officer to lose consciousness and fall. Petitioner then hit Officer Ash in the face and kicked her repeatedly in the back. Officer Ash drew her weapon and Petitioner ran away.

Officer Ash called for medical assistance for Officer Davis.[1]  Residents of the apartments and the men who spoke initially with Officer Ash attempted to help. A resident told Officer Ash that Petitioner had kicked in her door and threatened an occupant of the apartment with a gun. Meanwhile, Petitioner turned and began to walk back to the scene. However, other police officers began to arrive to assist. Petitioner turned and ran away again. Detective Tyrone Lynn gave chase and eventually caught up with Petitioner. Detective Lynn told Petitioner to turn around and put his

---

[1]      Officer Davis's injuries, including multiple facial fractures and separation of the upper jaw from the skull, had to be repaired surgically.

hands behind his back.  Petitioner refused to comply, and began fighting and exchanging blows with Detective Lynn. Petitioner ran again.  After involving three (3) more police officers, Lewis, Sanders, and Dean, Petitioner was finally subdued and handcuffed.  However, he offered resistance during the entire episode, refused to comply with orders given by the police officers, and was verbally abusive.  In addition, based on information received at the scene, police obtained a warrant to search Petitioner's apartment.  They found a loaded .40 caliber semiautomatic pistol, two magazines, a shoulder holster, and papers bearing the name of Jeffrey Reagle and the address 1441 E. 2nd Street, Apartment D.

Based on those events and subsequent investigation, Petitioner was charged, in Tulsa County District Court, Case No. CF-2007-3743, with First Degree Burglary (Count I), Possession of a Firearm After Former Conviction of a Felony (Count II), Feloniously Pointing a Firearm (Count III), Aggravated Assault and Battery Upon a Police Officer (Count IV), two counts of Assault and Battery Upon a Police Officer (Counts V and VI), Resisting a Police Officer (Count VII).  An amended information alleged that Petitioner had three (3) prior felony convictions.  Counts I and III were dismissed at preliminary hearing.  A second amended information was filed reflecting the dismissal of Counts I and III and adding a new misdemeanor charge, Discharging a Firearm in a Public Place (Count VIII).

Petitioner was tried by a jury in a three (3) stage trial. At trial, the counts were identified as Count A, Possession of a Firearm, AFCF; Count B, Aggravated Assault and Battery on a Police Officer (Richard Davis); Count C, Assault and Battery on a Police Officer (Carolyn Ash); Count D, Assault and Battery on a Police Officer (Tyrone Lynn); Count E, Resisting a Police Officer; and Count F, Discharging a Firearm in a Public Place.  In the first stage, Petitioner was tried and

convicted on Counts B-F.  In the second stage, Petitioner was found guilty of Count A.  In the third stage, the jury recommended that Petitioner be sentenced to life imprisonment on each of Counts A and B; eighty (80) years imprisonment on each of Counts C and D; and one (1) year imprisonment on each of Counts E and F.  On February 25, 2008, the trial judge dismissed Counts E and F and sentenced Petitioner in accordance with the jury's recommendation on Counts A-D, with all sentences ordered to be served consecutively. At trial, Petitioner was represented by attorney Rick Couch from the Tulsa County Public Defenders' Office.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Stuart Southerland, he raised eight (8) propositions of error:

Proposition 1:  The prosecution presented evidence of a number of "prior bad acts" similar in nature to the charges against Appellant, and the resulting prejudice requires reversal or modification.

Proposition 2:  It was reversible error for the trial court to refuse defense counsel's request for a competency examination.

Proposition 3:  The jury was not properly instructed on Appellant's theory of defense.

Proposition 4:  As a result of the unlawful search of Appellant's apartment, evidence was presented at trial which contributed to conviction in Count II.  Appellant's conviction for Possession of a Firearm After Former Conviction of a Felony must be reversed with instructions to dismiss.

Proposition 5:  Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.
    1.    Defense counsel failed to object to numerous instances of prejudicial prior bad act evidence.
    2.    Competency, failure to request a hearing.

Proposition 6:  Numerous instances of prosecutorial misconduct, which took place during trial served to deny Appellant the right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution.
    1.    Evidence of prior bad acts.
    2.    Sympathy for the victims and appeal to societal alarm.

3.  Misstating evidence and suggesting that there was evidence that the jury was not permitted to hear.

4.  The prosecutor offered his opinion of the appropriate sentence.

Proposition 7: Appellant's sentence was excessive and should be modified.

Proposition 8: The combined effect of the error at Appellant's trial requires reversal or modification.

(Dkt. # 12, Ex. 1).  In an unpublished summary opinion filed March 18, 2009, in Case No. F-2008-228 (Dkt. # 12, Ex. 3), the OCCA rejected all claims and affirmed the Judgments and Sentences of the trial court.

Petitioner filed a petition for rehearing, requesting that the OCCA address propositions of error he raised in a pro se supplemental brief. In his pro se supplemental brief, Petitioner identified the following propositions of error:

1.  The Appellant was wrongfully convicted for 3 cnts A&B on the police, in his case he had excusable cause and the police were not in the performance of their duties so he is not even guilty by Ok. Statute Tit. 21, Ch. 20, Sec. 649 and 650, so the case must be vacated and dismissed.

2.  The Appellant was wrongfully convicted of Poss. of a Firearm AFCF and the charge must be vacated and dismissed, he is being held in direct violation of his constitutional rights.

3.  The Appellant's time was enhanced with the use of after formers which is unconstitutional and not even allowed to be law, the AFCF's must be vacated and dismissed.

4.  The prosecutor committed perjury several times in the trial, therefore, all evidence [or] conversation of the prosecutor must be impeached and with the absence of any evidence or conversation the entire case must be vacated and dismissed.

5.  Appellant's sentence was excessive and should be modified.

(Dkt. # 12, Ex. 5).  By order filed April 6, 2009, the OCCA granted the petition for rehearing, considered Petitioner's pro se claims on the merits, and denied relief thereon. See id., Ex. 4. On

5

April 16, 2009, Petitioner, appearing pro se, filed a second petition for rehearing, asking the OCCA to reconsider the denial of the claims raised in the pro se supplemental brief.  By order filed May 8, 2009, the OCCA denied the second petition for hearing.  See id., Ex. 6.

Petitioner filed his federal habeas corpus petition on August 7, 2009 (Dkt. # 1). On August 12, 2009, Petitioner filed a second, nearly identical petition in N.D. Okla. Case No. 09-CV-512-GKF-FHM.  By Order filed August 20, 2009, the Court consolidated the two cases and directed Petitioner to file an amended petition.  On August 27, 2009, Petitioner filed an amended petition raising thirteen (13) grounds of error, as follows:

| | |
|---|---|
| Ground 1: | Prosecution presented prior bad acts similar in nature to charges against appellant, resulting prejudice requires reversal or modification. |
| Ground 2: | Reversible error to deny defense counsel's request for a competency exam. |
| Ground 3: | Jury wasn't properly instructed on appellant's theory of defense. |
| Ground 4: | As a result of unlawful search, evidence was presented which contributed to conviction. Appellant's conviction must be dismissed. |
| Ground 5: | Appellant received ineffective assistance of counsel in violation of the 6th and the 14th Amendments to the U.S. Constitution.  Defense counsel failed to object to numerous instances of prejudicial testimony; competency, failure to request a hearing. |
| Ground 6: | Numerous instances of prosecutorial misconduct, which took place during trial, served to deny the Appellant a fair trial. Evidence of prior bad acts, sympathy for the victims and appeal to societal alarm, misstating evidence and suggesting evidence was there the jury wasn't permitted to hear, prosecutor offered his opinion of the appropriate sentence. |
| Ground 7: | Appellant's sentence was excessive and should be modified. |
| Ground 8: | The combined effect of the error at the appellant's trial requires reversal or modification. |
| Ground 9: | The appellant was wrongfully convicted for three cnt of A&B on the police, in his case he had excusable and justifiable cause and the police weren't in |

the performance of their duties so he is not even guilty by Okla. Statute so the case must be vacated and dismissed.

Ground 10:    The appellant was wrongfully convicted of poss. of a firearm AFCF and the charge must be vacated and dismissed, he is being held in direct violation of his constitutional rights.

Ground 11:    Appellant's time was enhanced with the use of after formers which is unconstitutional and not allowed to be law, the AFCF's must be vacated and dismissed.

Ground 12:    The prosecutor committed perjury several times during the trial, therefore all evidence and conversation must be impeached and with the absence of no evidence or conversation the entire [sic] must be vacated and dismissed.

Ground 13:    The appellant's sentence was excessive and should be modified.

See Dkt. # 8.  In response to the amended petition, Respondent argues Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).   See Dkt. # 12. Petitioner filed a reply to Respondent's response, and asserts that he is entitled to habeas corpus relief because the OCCA's resolution of his direct appeal was "nonjudicial." See Dkt. # 15.

## *ANALYSIS*

### A.    Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).   See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claims to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

### B.    Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

To the extent Petitioner's claims are cognizable in this federal habeas corpus proceeding, his claims shall be reviewed pursuant to § 2254(d).

**1. Prosecutorial misconduct (grounds 1, 6 and 12)**

As his first proposition of error, Petitioner complains that the prosecutor improperly presented evidence of "prior bad acts similar in nature to charges against appellant, and resulting prejudice requires reversal or modification." See Dkt. # 8.  Specifically, he claims that the "D.A. had cops testify that [they] had prior run-ins with the appellant." Id.  In proposition six, Petitioner claims that the prosecutor also improperly evoked sympathy for the victims, appealed to societal alarm,

misstated evidence, improperly suggested that there was additional evidence the jury was not permitted to hear, and offered his opinion of the appropriate sentence. Id. As his twelfth proposition of error, Petitioner claims that "the prosecutor committed perjury several times during the trial." See Dkt. # 8. Petitioner specifically alleges that "the D.A. lied about the bullets matching the shots fired [at the] scene & made up stories about other guns." Id.

On direct appeal, the OCCA rejected these claims, finding that "the prosecutor did not act improperly in introducing the other crimes evidence at Reagle's insistence." See Dkt. # 12, Ex. 3 at 4.  In addition, the OCCA further found that Petitioner was not prejudiced by statements made by the prosecutor in closing argument, as follows:

> The record does not support Reagle's claim that the prosecutor urged jurors to have sympathy for the victims and incited societal alarm. The prosecutor neither misstated evidence nor suggested that there was other evidence jurors could have heard; any misunderstanding caused by the prosecutor's awkward phrasing regarding the shell casings and gun was cured by the trial court. Prosecutors may recommend a sentence to the jury.

(Dkt. # 12, Ex. 3 at 4 (citations omitted)).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-48; Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

When viewed in light of the evidence presented at trial, the Court concludes that the referenced comments by the prosecutor did not tip the scales in favor of the prosecution to the

9

detriment of Petitioner's constitutional rights. First, Petitioner's defense at trial was that, because

he had a history of being unfairly targeted by law enforcement officials and had been subjected to

multiple beatings during his run-ins with the law, his conduct was justified. As a result, he requested

that the evidence of his prior encounters with Tulsa area law enforcement officers be admitted into

evidence.[2] Because the evidence was presented at Petitioner's request, the prosecutor did not act

improperly in presenting the evidence of Petitioner's prior bad acts.

In addition, the Court agrees with the OCCA that the prosecutor's comments during closing

argument were based on the evidence, were not improper appeals for sympathy, and were not

attempts to invoke societal alarm. Furthermore, the prosecutor did not misstate the evidence

concerning the shell casings recovered in the alley. Mark L. Boese, firearms examiner for the Tulsa

Police Department, testified that the casings were discharged from the same weapon. See Dkt. # 14-

5, Tr. Trans. Vol. III at 591. He also testified that the casings were not fired from the gun recovered

from Petitioner's apartment. Id. at 592. In closing argument, the prosecutor stated that "[w]e recover

the casings and they don't match the gun we find in the defendant's apartment, but they are from the

same gun, okay?" See Dkt. # 14-6, Tr. Trans. Vol. IV at 762. In response to defense counsel's

objection, the trial court corrected any possible confusion by stating that the casings were not fired

---

[2]     At the pretrial motion hearing, held February 11, 2008, or the day before the jury trial began, the trial judge considered the State's request to withdraw its previously filed notice of its intent to present evidence of Petitioner's prior interactions with Tulsa Police, Sand Springs Police, and Tulsa County Deputies. See Dkt. # 14-2, Trans. Mot. Hr'g at 18-34.   The prosecutor argued that the evidence "could potentially be prejudicial to both sides." Id. at 20. In response, defense counsel argued that Petitioner's defense was based on Petitioner's belief that his actions on July 10, 2007, were justified because "in past encounters with the police, he's been unreasonably treated. He's been treated harshly, he's been beaten and suffered injuries" Id. at 21. Petitioner himself stated that his position was to "[l]eave it all in." Id. at 27. The trial judge proceeded to review the five (5) incidents and ruled that four (4) of the five (5) instances would be admitted. Id. at 28-34.

10

from the gun found in the apartment. Id. at 763. The prosecutor never stated, as argued by Petitioner, that the casings found in the alley were fired from the gun recovered from Petitioner's apartment. Lastly, under the facts of this case, the Court finds no reasonable probability that the jury's verdicts and recommended sentences were rendered fundamentally unfair by prosecutorial misconduct. See United States v. Young, 470 U.S. 1, 11-12 (1985) (concluding that a criminal conviction should not be readily overturned on the basis of a prosecutor's comments alone; statements must be viewed in context of entire proceeding to determine whether conduct affected fairness of trial). Petitioner is not entitled to habeas corpus relief as to the claims of prosecutorial misconduct raised on direct appeal because he has failed to demonstrate that the OCCA's adjudication was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at trial.  See  28 U.S.C. § 2254(d).

### 2.  Denial of request for competency exam (ground 2)

In ground two, Petitioner claims that the trial judge erroneously denied defense counsel's request for a competency exam. See Dkt. # 8. In rejecting this claim on direct appeal, the OCCA cited Ryder v. State, 83 P.3d 856 (Okla. Crim. App. 2004) (stating that "[a] defendant's deliberate choice to act hostile to counsel is not sufficient to warrant a finding of incompetence"); Phillips v. State, 989 P.2d 1017, 1027 (Okla. Crim. App. 1999), cert. denied, 531 U.S. 837 (2000); and Fitzgerald v. State, 972 P.2d 1157, 1162-63 (Okla. Crim. App. 1998), and ruled that "the trial court did not err in finding that Reagle was able to consult with his attorney and had a rational and actual understanding of the proceedings, and in refusing counsel's request for a competency hearing." See Dkt. # 12, Ex. 3 at 3.

11

In McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001), the Tenth Circuit Court of Appeals

summarized federal law governing competency as follows:

> It is well-settled that the "criminal trial of an incompetent defendant violates
> due process." Medina v. California, 505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d
> 353 (1992). This "prohibition is fundamental to an adversary system of justice."
> Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). The
> rule, rooted in the common law, is likely a "by-product of the ban against trials in
> absentia; the mentally incompetent defendant, though physically present in the
> courtroom, is in reality afforded no opportunity to defend himself." Id. at 171, 95
> S.Ct. 896 (quoting Foote, A Comment on Pre Trial Commitment of Criminal
> Defendants, 108 U.Pa.L.Rev. 832, 834 (1960)).
>
> The test for determining competency to stand trial is well-established. The
> trier of fact must consider "whether [defendant] has sufficient present ability to
> consult with his lawyer with a reasonable degree of rational understanding-and
> whether he has a rational as well as factual understanding of the proceedings against
> him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824
> (1960). "That defendant can recite the charges against [him], list witnesses, and use
> legal terminology are insufficient" to demonstrate that he had a rational, as well as
> factual, understanding of the proceedings. United States v. Williams, 113 F.3d 1155,
> 1159 (10th Cir. 1997).
>
> "[C]ompetency claims can raise issues of both substantive and procedural due
> process." Walker v. Att'y Gen., 167 F.3d 1339, 1343 (10th Cir. 1999). A procedural
> competency claim is based upon a trial court's alleged failure to hold a competency
> hearing, or an adequate competency hearing, while a substantive competency claim
> is founded on the allegation that an individual was tried and convicted while, in fact,
> incompetent. Id. at 1343-44. Accordingly, an individual raising a procedural
> competency claim is held to a lower burden of proof than one raising a substantive
> competency claim. See id. at 1344.

McGregor, 248 F.3d at 951-52 (footnote omitted).  To make out a procedural competency claim, a

defendant "must raise a bona fide doubt regarding his competency to stand trial . . . ." Id. at 952.

This requires a demonstration that "a reasonable judge should have doubted" the defendant's

competency. Id. at 954. It does not require proof of actual incompetency. Id. A substantive

competency claim, on the other hand, requires the higher standard of proof of incompetency by a

preponderance of the evidence. Cooper v. Oklahoma, 517 U.S. 348, 368-69 (1996); Walker v. Att'y

Gen., 167 F.3d 1339, 1344 (10th Cir. 1999).

12

In the proposition of error before the Court, Petitioner raises a procedural competency claim, arguing that the trial court erred in denying defense counsel's request for a competency hearing. In examining this claim, the Court must "examine the totality of the circumstances: all evidence should be considered together, no single factor 'stand[s] alone.'" McGregor, 248 F.3d at 955 (quoting Drope, 420 U.S. at 180 (quotation omitted)). The Court must examine "whether the trial court 'fail[ed] to give proper weight to the information suggesting incompetence which came to light during trial.'" Id. (quoting Drope, 420 U.S. at 179).

The record reflects that defense counsel requested a competency hearing on the day before the trial commenced.  See Dkt. # 14-2, Trans. Mot. Hr'g dated Feb. 11, 2008.  Counsel stated that Petitioner understood the charges against him, but he doubted whether Petitioner was able to assist counsel as a result of Petitioner's lack of trust in both counsel and the system. Id. at 3-4. In response to defense counsel's request for a competency hearing, the prosecutor stated that Petitioner "certainly believes he is innocent." Id. at 6.  The prosecutor also opined that while Petitioner had "an attitude issue," he did not believe Petitioner was incompetent.  Id. at 7. The trial judge then conducted a lengthy colloquy with Petitioner.  Id. at 7-17.  That colloquy ended with the following exchange and ruling by the trial judge:

THE COURT:          You understand, sir, that if we start the trial --

THE DEFENDANT:  Yes, ma'am.

THE COURT:          -- and you don't follow my directives, that even though a defendant has a right to be present at every stage in the proceedings, that if you don't follow the directives, I can have you removed and the trial will still go forward without you present.

THE DEFENDANT:  Let's be clear. As long as Mr. Couch is willing to adequately represent me -- like I said, I never should have had to ever say anything in the courtroom. That wasn't my job, that was his job.

THE COURT:            Sir, just so we're clear, Mr. Couch is the counsel, he knows how to get the evidence in, he knows how to keep the evidence out. He's the one that's trained in the law and any outbursts from you during the trial will cause your removal; do you understand?

THE DEFENDANT:   As long as the man represents me, we won't have any problems.

THE COURT:            Okay, good. That's what I wanted to hear.
                     The Court does not believe that Mr. Reagle is incompetent. Mr. Reagle is very familiar with his rights, he's very familiar with the Constitution of the State of Oklahoma and the Constitution of the United States as well as various Oklahoma statutes that he's quoted here today.
                     He may have a different view of how we ought to conduct the court, and I will admit that he appears to feel like he can tell his lawyer what to do, which may be something of an uncomfortable position for Mr. Couch to occupy, but I do believe that he is competent. And I will deny the request for an examination at this point in time.

Id. at 16-17.  The next day, Petitioner's jury trial began.  The record reflects that during trial,

Petitioner engaged in disruptive behavior, including chattering and talking, and that the trial judge

had to admonish him to keep his voice down.  See, e.g., Dkt. # 14-4, Tr. Trans. Vol. II at 353, 355.

At one point during the trial, Petitioner raised his pants leg to show his security device to the jury.

See Dkt. # 14-5 Vol. III at 608-13.

After the State presented its last witness, but before the State rested, the trial judge attempted

to make a record, outside the presence of the jury, concerning Petitioner's decision whether or not

to testify.  Petitioner indicated he did not intend to testify despite having previously told the judge

he would testify.  At that point, defense counsel requested a mistrial and again argued that Petitioner

was incompetent. The following exchange took place:

MR. COUCH:          Judge, regarding his -- yesterday when we made a record, Mr. Reagle advised the Court that he wished to testify. Today he's advising the Court and counsel that he does not wish to testify. I tried to visit with him about the advantages and disadvantages of testifying, he would

14

not let me speak, he just started telling me what needs to be done and I needed to follow his directions.

I submit, Judge, this is just another indication that my client is not competent to proceed with trial. He understands what he's charged with, he is able to assist to some degree, but I think with respect to making decisions that are rational and reasonable and based on being able to communicate with counsel, he's not able to do that.

And I think that certainly he's presented different motions and jury instructions to the jury, I think one with respect to perjury and another one with respect to -- I think that's the one that's [sic] talking about, claiming that the State has perjured itself in presenting this particular evidence.

THE DEFENDANT:   They have.

MR. COUCH:   I think, you know, here again it just shows that his reasoning with respect to the trial proceedings is just, is not in accordance with reality. And so because of that, I don't think that we should proceed.

* * * *

MR. COUCH:   I just would ask the Court to declare a mistrial and have Mr. Reagle evaluated because I do not think he can assist this counsel or any counsel.

THE COURT:   Mr. Drummond, do you wish to address the request for mistrial and the issue of competence before I talk with the defendant with regard to his testimony?

MR. DRUMMOND:   Yes, Your Honor. As the record should reflect, our tables are probably about ten feet apart. So without question, the defendant has been communicating with his counsel. Whether he's stubborn or untrained in the law or doesn't understand what's going on because he's not a lawyer, I think those are issues that any person in his chair would be experiencing.

But I do not think at this late date that there should be a mistrial, nor -- at least in what I've heard and as this Court knows, conversation has been going on throughout this trial at counsel table, and surely the defendant's not listening. But I don't think all those things in totality rise to a level of a competency issue which, at least from what I have understood and heard and what has been going on.

So I would respectfully request that the mistrial -- motion for mistrial be denied and that we continue.

15

THE COURT:    Certainly this matter was broached with the Court prior to the beginning of the trial and the Court inquired specifically of the defendant. At that point in time, the Defendant seemed to understand his legal options.  He seemed to know what he was charged with. He seemed aware of legal procedure.

I do think that the defendant is somewhat recalcitrant in taking counsel's advise [sic]. I do not think that indicates that he's incompetent, but simply he has his own way of running his defense and he seems to be rather vocal in that.  But I do not think it means that he's incompetent.

He may not agree with what counsel thinks is the appropriate way to proceed, but not agreeing does not make a person incompetent. The motion for mistrial will be denied.

Id. at 706-09. The trial continued.  Petitioner did not testify.  During closing arguments, Petitioner's disruptive behavior escalated. He interrupted the prosecutor's closing argument numerous times. See Dkt. # 14-6, Tr. Trans. Vol. IV at 744, 746, 752, 754, 758, 767, 768, 771.  Finally, during defense counsel's closing argument, Petitioner was removed from the courtroom. Id. at 788. Petitioner returned to the courtroom for the reading of the verdicts, see id. at 794, and for the subsequent stages of the trial.

"The state trial court's finding of competency is presumed correct unless rebutted by clear and convincing evidence." Wilson v. Sirmons, 536 F.3d 1064, 1070-71 (10th Cir. 2008). Upon review of the record, the Court cannot find that the trial court failed to give proper weight to the information suggesting incompetence which came to light during trial. The record reflects that Petitioner was impulsive, argumentative with counsel, and persistent in his efforts to express his belief that his prosecution violated the constitutions of the United States and the State of Oklahoma. Although Petitioner's arguments are either wrong as a matter of law or unsupported by the facts, they cannot be categorized as delusional or irrational. His behavior during trial did not rise to the level of incompetence.  Petitioner has failed to rebut the state trial court's finding of competency

with clear and convincing evidence.  He has failed to meet his burden of demonstrating that the trial

judge should have doubted his competency, or that there was a bona fide doubt regarding his

competency. Accordingly, this Court finds that Petitioner was not denied procedural due process by

the state court's denial of his request for a competency hearing.  Petitioner has failed to demonstrate

entitlement to relief on this claim under 28 U.S.C. § 2254(d) and (e).

### 3.  Improper jury instructions (ground 3)

As his third ground of error, Petitioner claims that his jury was not properly instructed on

his theory of defense.  See Dkt. # 8. He complains that the trial judge denied defense counsel's

request for instructions on self-defense and his right to resist unlawful arrest.  Id. The OCCA

rejected this claim, finding as follows:

> The trial court must instruct on every defense theory recognized by the law and
> supported by the evidence. As no evidence supported either instruction, there was no
> abuse of discretion. Throughout the trial Reagle claimed his initial detention and
> subsequent arrest were illegal. Independently reviewing that evidence, we agree with
> the trial court that they were not. As the proposed instruction turned on a matter of
> law which the trial court had already decided against Reagle, the trial court did not
> err in refusing it. The testimony of any of the State's witnesses did not, as Reagle
> suggests, support a self-defense instruction; all the officers testified Reagle was the
> aggressor in their encounters with him on the day of the crimes.

(Dkt. # 12, Ex. 3 at 3 n.3 (citations to state law omitted)).

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in

federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner

of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997)

(quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979,

984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the

basis of erroneous jury instructions when the errors had the effect of rendering the trial so

fundamentally unfair as to cause a denial of a fair trial."). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2). First, the OCCA's determination that there was no abuse of discretion in the trial court's refusal to instruct on Petitioner's right to resist an unlawful arrest is supported by the record. Furthermore, the OCCA's conclusion that a self-defense instruction was not justified by the evidence is also supported by the record because nothing suggests that the officers were the aggressors in their confrontations with Petitioner. Upon careful review of the record, the Court finds that the state court's refusal to issue Petitioner's requested instructions on self-defense and the right to resist unlawful arrest did not deprive Petitioner of fundamental fairness or violate due process. See Henderson, 431 U.S. at 155.

### 4. Fourth Amendment claim (grounds 4 and 9)

In ground 4, Petitioner claims that evidence used against him was obtained as the result of an unlawful search.  On direct appeal, Petitioner argued that an unlawful search of his apartment yielded evidence contributing to his conviction on Count II, Possession of a Firearm After Former Conviction of a Felony, in violation of the Fourth Amendment.  The OCCA denied relief on this claim, finding that "the search warrant affidavit provided a substantial basis from which the

magistrate, taking all the circumstances into consideration and making a practical, common sense decision, could conclude there was a fair probability that evidence of a crime would be found in Reagle's apartment." See Dkt. # 12, Ex. 3 at 3 (footnote omitted). Respondent contends that Petitioner has been provided the opportunity to fully and fairly litigate his Fourth Amendment claim, thus precluding habeas relief according to Stone v. Powell, 428 U.S. 465 (1976).

In ground 9, Petitioner challenges his conviction of Aggravated Assault and Battery on a Police Officer and two (2) convictions of Assault and Battery on Police Officers, claiming he "had excusable and justifiable cause and the police weren't in the performance of their duties." See Dkt. # 8. In support of this claim, Petitioner states as follows:

> The police came up to the appellant in his own yard patted him down without permission, they say they were investigating a report that shots were fired in the area & to see if he was a man with a gun, they pat him down & he has no gun, he has no warrants, & he is not under arrest, he turns to walk away & the police grab him & start to wrstle [sic] around with him committing A & B on him & giving him cause & they could not possibly be in the performance of their duties cause they never ask to search, plus once they have searched they can no longer be in the performance of their duties. The information in this case is clear, the officers gave Mr. Reagle cause & they clearly exceeded their duties.  A person is only guilty if they don't have excusable cause and if the police were in the performance of their duties which they were clearly not. The assault charges mut be vacated & dismissed.

(Dkt. # 8).  In denying relief on Petitioner's request for rehearing, the OCCA stated as follows:

> We found in reviewing Reagle's claim of error in Proposition III of his Appellate Brief that the trial court did not err in finding that the search and seizure in this case were lawful. This finding necessarily includes a finding that the police were acting in performance of their duties, and Reagle's actions were not excusable.

(Dkt. # 12, Ex. 4 at 2).

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an

unconstitutional search and seizure was introduced at trial. Id. at482.   The Tenth Circuit has reiterated that a federal habeas corpus court may not overturn a state criminal conviction because of a violation of the Fourth Amendment if the petitioner had a full and fair opportunity to litigate the claim.  Brown v. Sirmons, 515 F.3d 1072, 1082 (10th Cir. 2008);  Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992); Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978).

The Court need not belabor its discussion of Petitioner's Fourth Amendment claim raised in ground 4 and the related claim raised in ground 9 because the record demonstrates that the state courts granted Petitioner a full and fair opportunity to litigate the claims.  Petitioner acknowledges that prior to commencement of trial, defense counsel filed a motion to suppress and quash, see Dkt. # 12, Ex. 8, O.R. at 82, in which he challenged both the validity of his initial detention and arrest and the validity of the search of his apartment.  After a hearing on the motion, Petitioner's motion to suppress and quash was overruled. Id. at 8 (docket entry dated November 19, 2007). As indicated above, Petitioner also raised his Fourth Amendment claims on direct appeal, see Dkt. # 12, Ex. 1, where they were rejected by the OCCA, see id., Ex. 3.  In denying the relief requested in Petitioner's motion for rehearing, the OCCA also considered and rejected Petitioner's related claim that because his detention and arrest were unlawful, the police were not acting in the performance of their duties. See Dkt. # 12, Ex. 4.

Based on the record, the Court concludes that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts.  As a result, this Court is precluded from considering the issues raised in grounds four and nine of Petitioner's amended petition for a writ of habeas corpus based on Stone, 428 U.S. at 494. See also Gamble, 583 F.2d at 1165 (opportunity for full and fair litigation in state court under Stone v. Powell includes opportunity to raise Fourth

20

Amendment claim, full and fair evidentiary hearing, and recognition and application of correct

Fourth Amendment standards).  Petitioner's request for habeas relief premised on violations of the

Fourth Amendment shall be denied.

### 5. Ineffective assistance of counsel (ground 5)

In proposition five, Petitioner claims that trial counsel provided ineffective assistance in

failing to object to numerous instances of prejudicial testimony and in failing to request a

competency hearing.  See Dkt. # 8.  Citing, *inter alia*, Strickland v. Washington, 466 U.S. 668, 697

(1984), the OCCA found that trial counsel "was not ineffective; we give great deference to counsel's

strategic decision regarding the other crimes evidence, and counsel did raise a question regarding

Reagle's competency."  See Dkt. # 12, Ex. 3 at 3-4 (footnotes omitted).  As to Petitioner's specific

claim regarding evidence of other crimes, the OCCA noted that:

> Counsel concurred with Reagle's belief that this evidence would support Reagle's
> claim that he was routinely persecuted by law enforcement and thus acted
> understandably and reasonably when confronted by Ash, Davis and other officers.
> While this strategy may have been unsuccessful, it was not unreasonable. Reagle
> complains that counsel was ineffective because, having decided to pursue this course,
> he failed to offer any evidence in support of it. Reagle himself insisted on admitting
> the evidence and stated several times that he intended to testify. The morning the
> defense case began Reagle changed his mind; defense counsel could not force him
> to testify on his own behalf. Counsel presented a witness who testified regarding his
> observations of one prior incident, contradicting the testimony of the officer
> involved. The record shows the other crimes evidence was not intended to be rebuttal
> evidence, and its admission did not depend on Reagle's testimony.

(Dkt. # 12, Ex. 3 at 4 n.6 (citation omitted)). Similarly, as to Petitioner's specific claim regarding

counsel's alleged failure to request a competency hearing, the OCCA noted that:

> Reagle claims that counsel should have raised a doubt as to his competency much
> earlier in the trial process. Nothing in the record supports the speculation that Reagle
> was or could have been found incompetent at any time before trial began. Trial
> counsel cannot be ineffective for failing to raise an issue which is nowhere supported
> in the trial record.

(Dkt. # 12, Ex. 3 at 4 n.7).

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. at 689.  To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).  This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential. " Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

As determined in Part B(1), above, the Court found that the prosecutor's presentation of evidence of other bad acts by Petitioner did not constitute prosecutorial misconduct in violation of his right to due process.  Petitioner himself requested that the evidence be admitted because he believed it supported his defense that his actions were justified and excusable.[3] Because the underlying claim lacks merit, Petitioner cannot demonstrate that there is a reasonable probability that the result of the proceeding would have been different had trial counsel objected to the admission of the evidence of prior bad acts. Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998) (citing Strickland, 466 U.S. at 694).  Similarly, as discussed in Part B(2), above, trial counsel did in fact request a competency hearing. To the extent Petitioner argues that trial counsel should have requested a competency hearing sooner than he did, the Court finds nothing in the record suggests that counsel had reason to doubt Petitioner's competency sooner than he did. As a result, Petitioner's claim is speculative and lacks merit. For that reason, the Court cannot find that trial counsel performed deficiently with regard to requesting a competency evaluation.  Id.  Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel.  28 U.S.C. § 2254(d).

### 6. Excessive sentences (grounds 7 and 13)

---

[3]  The record reflects that during trial and outside the presence of the jury, defense counsel made a record concerning the evidence of Petitioner's prior encounters with law enforcement officers and stated that his recommendation would be "not to open that door, just to argue the facts of this particular case so that he could be tried on this case only and not his prior history with respect to run-ins with the law and previous episodes of alleged violence by him. But inasmuch as I'm representing my client and he desires not to follow my advice with respect to that, he wishes to pursue opening that door and presenting that testimony." See Dkt. # 14-4, Tr. Trans. Vol. II at 249. The trial judge then asked Petitioner directly if his attorney had correctly stated Petitioner's position.  Petitioner answered "Yes, ma'am." Id. at 249-50.

In grounds 7 and 13, Petitioner complains that his sentences are excessive and requests that they be modified.  See Dkt. # 8.  Citing Rea v. State, 34 P.3d 148, 149 (Okla. Crim. App. 2001), the OCCA found that "under the facts and circumstances of this case and of the defendant, Reagle's sentences are not excessive." See Dkt. # 12, Ex. 3 at 4 (footnote omitted).

This Court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Indeed, the Court's review generally ends "once we determine the sentence is within the limitation set by statute." Id.

In this case, Petitioner's sentences, while lengthy, are authorized under Oklahoma's recidivist statute.  See Okla. Stat. tit. 21, § 51.1 (providing a sentencing range of "twenty (20) years to life imprisonment" for conviction of a subsequent felony after having been twice convicted of felony offenses). Petitioner's sentences are not excessive.  Petitioner is not entitled to habeas corpus relief on this claim.

### 7. Cumulative error (ground 8)

In ground eight, Petitioner claims that he is entitled to reversal of his convictions based on cumulative error.  See Dkt. # 8. The OCCA rejected this claim on direct appeal, stating that "as we found no error in the previous propositions, there is no cumulative error." See Dkt. # 12, Ex. 3.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000)

(quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). As determined above and below, the Court finds no error in this case and no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim is contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).  He is not entitled to habeas corpus relief on this ground.

### 8.  Violation of rights under the Second Amendment (ground 10)

In ground 10, Petitioner asserts that his conviction of Possession of a Firearm AFCF violates his Second Amendment right to bear arms. See Dkt. # 8. The OCCA addressed this claim in its order denying Petitioner's petition for rehearing. See Dkt. # 12, Ex. 4. Citing District of Columbia v. Heller, 554 U.S. 570, 626-27 (2008), the OCCA found "no support in the law for this claim. The United States Supreme Court has reaffirmed the unremarkable principle that legislatures may regulate the possession and use of firearms, including the possession of firearms by felons." Id. at 3.

Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d).  The OCCA's application of Heller was correct.  Heller, 554 U.S. at 626 (explicitly stating that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); see also United States v. McCane, 573 F.3d 1037, 1047 (10th

25

Cir. 2009) (rejecting claim that conviction of Felon in Possession of a Firearm violates Second Amendment).  Petitioner is not entitled to habeas relief on this claim. 28 U.S.C. § 2254(d).

### 9.  Improper enhancement (ground 11)

As his eleventh ground of error, Petitioner claims that the use of his prior felony convictions to enhance his sentence is unconstitutional based on the prohibition against double jeopardy. In denying relief on rehearing, the OCCA stated that "[u]se of prior convictions to enhance a sentence does not violate the prohibition against double jeopardy."  See Dkt. # 12, Ex. 4 at 3 (footnote omitted).

Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or an unreasonable application of, Supreme Court law.  The Supreme Court has long held that recidivist statutes do not offend double jeopardy principles and are constitutional. See Nichols v. United States, 511 U.S. 738, 747 (1994) (state recidivist statutes do not change the penalty imposed for the earlier conviction, and penalize only the last offense committed by the defendant); Gryger v. Burke, 334 U.S. 728, 732 (1948); Moore v. Missouri, 159 U.S. 673, 676-78 (1895).  Petitioner is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

## C.  Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a

court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable among jurists of reason.  See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his amended petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.   The original petition for writ of habeas corpus (Dkt. # 1) is **declared moot**.

2.   The amended petition for writ of habeas corpus (Dkt. # 8) is **denied**.

3.   Petitioner's motion to expedite ruling (Dkt. # 55) is **declared moot**.

4.   A separate judgment in favor of Respondent shall be entered in this matter.

5.   A certificate of appealability is **denied**.

**DATED** this 10th day of October, 2012.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

28